# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01651-NYW

STEVEN SCOTT SCHWIETERS,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") final decision partially granting Plaintiff Steven Schwieters's ("Plaintiff" or "Mr. Schwieters") application for Disability Insurance Benefits ("DIB"). Pursuant to the Parties' consent [#15], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [#23]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Upon review of the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

## BACKGROUND

    Mr. Schwieters, born October 29, 1962, alleges he became disabled on July 5, 2016, at 53 years-of-age, due to lung nodules, neuralgia of the right chest wall, COPD, PTSD, nerve damage of the right foot, general anxiety disorder, and somatoform disorder. *See* [#13-3 at 82-83;[1] #13-6

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the

at 192]. In addition, Plaintiff suffers from lumbar degenerative disc disease, multilevel spondylosis, thoracic radiculopathy, hip osteoarthritis, and bi-lateral knee pain. *See* [#13-2 at 15; #13-6 at 212-13, 220-24]. Plaintiff is a high school graduate who completed two years of community college without receiving a degree; he also served in the Army. *See* [#13-2 at 38, 42-43; #13-3 at 93; #13-6 at 193].

On October 27, 2016, Plaintiff filed his application for DIB. [#13-2 at 12; #13-3 at 81]. The Social Security Administration denied Plaintiff's application administratively on March 13, 2017, and upon reconsideration on March 20, 2017. *See* [#13-2 at 12, 40; #13-3 at 81; #13-4 at 96-102]. Mr. Schwieters requested a hearing before an Administrative Law Judge ("ALJ"), *see* [#13-4 at 103-17], which ALJ Kurt Shuman ("the ALJ") held on January 8, 2018, *see* [#13-2 at 12, 33]. The ALJ received testimony from the Plaintiff, Vocational Expert Bonnie Martindale (the "VE"), and Medical Expert Ronald Alston (the "ME") at the hearing. *See* [*id.* at 12, 31].

Mr. Schwieters testified that he last worked in July of 2016, though he would work if he could, and that he now receives disability benefits from the United States Department of Veterans Affairs (the "VA") for his chronic bronchitis and granulomatous lung disease. [#13-2 at 42-43, 55]. Plaintiff continued that his "lungs hurt all the time" and that he cannot tolerate the use of inhalers. *See* [*id.* at 43-45]. Mr. Schwieters also testified that he received pain and nerve medications which caused adverse reactions, but that he receives epidural "nerve injections" on his right side that help, though the injections are inconsistent in their length of relief. *See* [*id.* at 46-48, 54]. As to his other ailments, Plaintiff testified that he has degenerative disc disease, issues

---

bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the CM/ECF system.

with both knees, and arthritis in his hip—he used to see a chiropractor for these physical ailments; Plaintiff also stated that he suffered from psychological issues. *See* [*id.* at 49-55].

The ME then testified to Mr. Schwieters's mental impairments, and considered whether Plaintiff's mental impairments met or medically equaled certain listings. *See* [#13-2 at 57-58]. Though finding that the medical record supported the presence of certain mental ailments, the ME testified that these mental ailments caused no more than mild to moderate limitations and thus Mr. Schwieters's mental impairments did not meet or medically equal a listing. *See* [*id.* at 58-68].

The VE also testified at the hearing. Prior to the hearing, the VE summarized Mr. Schwieters's past relevant work to include auto mechanic, a specific vocational preparation ("SVP")[2] of 7, and a medium to very heavy exertion job; and a housekeeper-medical, a SVP of 2, and a medium to heavy exertion job. *See* [#13-6 at 256]. The VE testified that an individual, limited to light work and subject to several exertional and non-exertional limitations, could not perform Mr. Schwieters's past relevant work, but that such an individual could perform the light, unskilled jobs of marker and router—both SVP of 2. *See* [#13-2 at 72-74].[3] The VE explained that this individual could not maintain these jobs if he was off-task more than 10% each day, or would miss more than 1-2 days per month for medical appointments, or would need at least one unscheduled break of 30-60 minutes per week. *See* [*id.* at 78-79]. As to an individual limited to sedentary work and further exertional and non-exertional limitations, the VE testified that such an

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

[3] The VE also identified power-screwdriver, but later withdrew that job given Mr. Schwieters's use of an assistive device to ambulate. *See* [#13-2 at 74, 76].

individual could not perform Mr. Schwieters's past relevant work; the VE did not identify any jobs that such an individual could perform otherwise. *See* [*id.* at 75].

On July 21, 2017, the ALJ issued a "partially favorable" decision to Mr. Schwieters. The ALJ concluded that Mr. Schwieters:

1. had not engaged in substantial gainful activity since the alleged onset date;

2. had the severe impairments of: chronic pain syndrome, major depressive disorder, somatic symptom disorder, anxiety, PTSD, pectus excavatum, lung modules, thoracic radiculopathy, intercostal neuralgia, COPD, and emphysema;

3. had no impairment or combination of impairments that met or medically equaled a listing;

4. had the RFC to perform light work, subject to various limitations, and could not perform any past relevant work; and

5. had the ability to perform jobs existing in the national economy prior to October 29, 2017, but <u>did not</u> have that ability <u>after</u> October 29, 2017.

[#13-2 at 15-24]. Thus, at step five the ALJ determined that, pursuant to Medical-Vocational Guideline 202.06, Mr. Schwieters became disabled as of October 29, 2017, the date of his 55th birthday. [*Id.* at 24-25]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*id.* at 1-3]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on June 29, 2018, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

**LEGAL STANDARDS**

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her]

previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

On appeal, Mr. Schwieters challenges the ALJ's (1) step two conclusion because the ALJ erred in finding that Mr. Schwieters's lumbar degenerative disc disease, multilevel spondylosis, thoracic radiculopathy, hip osteoarthritis, bi-lateral knee pain, and right foot issues were not severe impairments; (2) the RFC assessment because the ALJ failed to account for the limitations imposed by Plaintiff's non-severe impairments; and (3) step five conclusion because the ALJ erred in finding that Plaintiff was not disabled until October 29, 2017 based on the ALJ's misapplication of the Medical-Vocational Guidelines. *See* [#20; #22].[4] I consider each in turn.

---

[4] In passing, it appears that Mr. Schwieters argues that the ALJ erred at step three by not finding that his COPD and emphysema meet or medically equal a listing. *See* [#20 at 5-6]. To the extent Plaintiff intended to raise challenges not identified above, he has not sufficiently developed such issues for review by this court and has waived them. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) (explaining that it is not the court's role to craft arguments for litigants, especially when represented by able counsel).

**I.	Step Two**

At step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Indeed, an ALJ may conclude that an ailment is not a medically determinable impairment—a particularly important finding, as the ALJ must consider only <u>medically determinable impairments</u> (severe or not) at subsequent steps. *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps.").

Mr. Schwieters argues that the ALJ erred at step two because the ALJ failed to find that Mr. Schwieters's lumbar degenerative disc disease, multilevel spondylosis, thoracic radiculopathy, hip osteoarthritis, bi-lateral knee pain, and right foot issues were severe impairments. *See* [#20 at 5-10]. Plaintiff contends that each has more than a minimal effect on his ability to perform basic work activities. *See* [*id.*]. Mr. Schwieters continues that the ALJ's error in this regard negatively impacted the ALJ's analysis at later steps and constitutes reversible error. *See* [*id.*]. While Mr. Schwieters is correct that the ALJ must consider all severe and non-severe impairments at later steps, I agree with the Commissioner that any error by the ALJ in finding the above impairments non-severe is harmless.

7

In *Allman v. Colvin*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained that at step two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step considering *all* of the claimant's ailments (severe or not) anew. 813 F.3d 1326, 1330 (10th Cir. 2016). "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-CV-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe.").

Here, the ALJ found ten severe impairments, *see* [#13-2 at 15], and "proceeded with the analysis as required." *Troe v. Berryhill*, No. 16-CV-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330). Thus, I conclude that the ALJ did not err at step two.[5]

---

[5] Mr. Schwieters also contends that the ALJ erred in failing to consider the United States Department of Veterans Affairs' determination that Plaintiff's chronic bronchitis with benign granulomatous nodules was 100% disabling as of April 21, 2016, and cites to *Grogan v. Barnhart*, 399 F.3d 1257 (10th Cir. 2005). While this argument appears to speak to a purported step three finding that Plaintiff's COPD and emphysema do not meet or medically equal a listing, *Grogan* is inapposite, because the ALJ here found Plaintiff's COPD and emphysema to be severe impairments and considered these at later steps, whereas in *Grogan* the ALJ found Mr. Grogan's sole impairment to be non-severe and thus denied benefits at step two. *See Grogan*, 399 F.3d at 1261, 1262-63.

8

## II. The RFC Assessment

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

The ALJ determined that Mr. Schwieters retained the RFC to "perform light work . . . except the claimant is only able to occasionally climb ladders, ropes, or scaffolds, but is able to frequently climb ramps and stairs. He is able to frequently balance with a handheld assistive device that is required for uneven terrain or prolonged ambulation[,]" among other limitations. [#13-2 at 17]. According to Mr. Schwieters, the ALJ erred in assessing Plaintiff's RFC because the ALJ did not consider the combined effects of Plaintiff's non-severe impairments, either singly or in combination. *See* [#20 at 6; #22 at 2]. Specifically, Plaintiff argues that his non-severe

9

impairments pose further restrictions on his ability to walk and stand, and thus the ALJ should have limited Plaintiff to sedentary work rather than light work.[6] *See* [#20 at 7-12; #22 at 2-5]. Plaintiff further argues that the medical record demonstrates that he has medical appointments 3-4 times per month, which would eliminate his ability to sustain gainful employment. *See* [#20 at 11-12; #22 at 5]. I respectfully disagree.

In assessing Plaintiff's RFC, the ALJ first summarized Plaintiff's subjective complaints in his disability and function reports and then considered Mr. Schwieters's hearing testimony. *See* [#13-2 at 18]. The ALJ determined that the medical evidence supported Plaintiff's symptoms, but did not support his subjective complaints as to their intensity, persistence, and limiting effects. [*Id.*].

The ALJ next considered the objective medical evidence. Relevant here, the ALJ began with a narrative discussion of Plaintiff's chronic pain syndrome/intercostal neuralgia. *See* [*id.*]. The ALJ discussed treatment notes from 2016, wherein Plaintiff presented to various providers complaining of diffuse body pain, including neuropathic pain, back pain, knee pain, ankle and foot pain, and hip pain. *See* [*id.* at 18-19 (citing [#13-7 at 314-15; #13-8 at 365-71; #13-9 at 496-50; #13-13 at 718-23, 731; #13-16 at 1012-13])]. The ALJ next considered treatment notes from 2017, wherein Plaintiff began treating with Ashish Chavada, M.D. for his "right-sided intercostal neuropathic rib pain, as well as right foot, lower and upper back pain." [*Id.* at 19 (citing [#13-7 at 322-29])]. The ALJ noted that Dr. Chavada proscribed thoracic epidural steroid injections that relieved Plaintiff's pain and allowed him to be more active, including going to the gym. *See* [*id.* (citing [#13-15 at 920-25; #13-17 at 1088-1094, 1140])]. And while the ALJ acknowledged that

---

[6] Sedentary work, despite involving sitting, requires "a certain amount of walking and standing" to carry out job duties, whereas light work "requires a good deal of walking or standing[.]" 20 C.F.R. § 404.1567(a)-(b).

10

Mr. Schwieters's "radiculopathy did cause some physical limitations, as evidenced by his need for a cane[,]" the ALJ also noted that Plaintiff could perform basic activities of daily living and received relief from the epidural steroid injections. *See* [*id.* at 21]. The ALJ ultimately concluded that medical record did not fully support Plaintiff's subjective allegations of his ailments' effects on his functionality, and then considered the opinion evidence of record. *See* [*id.* at 21-23].

Mr. Schwieters argues that the medical record supports greater limitations on his ability to stand and walk than found by the ALJ. He contends that the ALJ failed to consider the effects of his non-severe impairments, either singly or in combination, which limit Plaintiff to sedentary work. The Commissioner responds, and the court agrees, that the ALJ properly considered <u>all</u> of Mr. Schwieters's impairments in assessing Plaintiff's RFC. *See* [#21 at 9]. The Commissioner further contends that the ALJ properly considered and discounted Plaintiff's "subjective complaints based on their inconsistency with the broader record"; properly weighed the medical opinion evidence; and properly determined that Plaintiff retained the RFC to perform light work despite his various non-severe and severe impairments. *See* [*id.* at 10].

Mr. Schwieters argues that the medical evidence is "replete" with instances where Plaintiff's non-severe impairments affect his ability to walk and stand. But the ALJ is not required to identify "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). And the medical evidence Plaintiff relies on simply establishes the presence of his non-severe impairments and does not support his assertions that these impose greater restrictions on his ability to walk or stand than the ALJ found. Indeed, Mr. Schwieters must do more than show the presence of a condition; it remains his burden to demonstrate that these conditions pose limitations on his ability to perform work-related tasks. *See*

11

*Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) ("Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations."). Moreover, some of the medical evidence contradicts Mr. Schwieters's assertions that he has greater limitations on his ability to walk or stand. *See, e.g.*, [#13-7 at 279 (imagining of right foot shows normal alignment, no fracture or dislocation, and no stress fracture despite degenerative changes), 292-93 (imaging of left hip shows mild degenerative changes but no discrete abnormal soft tissue calcifications), 294 (imagining of spine shows normal alignment and no evidence of dynamic instability), 303 (imaging of knees shows bi-lateral calcium crystal deposition disease but no acute fracture, dislocation, or bone destruction), 309 (noting slight improvement in conditions), 323 ("The patient is able to walk without assistance."); #13-9 at 474-79 (full strength and range of motion); #13-13 at 718-20 (requesting a cane for assistance but physical exam notes Plaintiff ambulates without assistance), 729 (presenting ambulatory to emergency room); #13-17 at 1089 (noting that Plaintiff exercises at the gym), 1091-92 (full strength and range of motion), 1134-38 (noting Plaintiff could ambulate without assistance and had full strength and range of motion); #14-8 at 2120 (normal strength and gait)].

Nor is the court convinced that the ALJ erred in not assessing any limitations based on Mr. Schwieters's absenteeism. Despite arguing that the record "shows unambiguously that Mr. Schwieters was in an[d] out of emergency rooms and treating on average 3-4 times a month at necessary medical appointments[,]" the court's review of the medical evidence does not reveal this with such clarity. Further, aside from raising this issue at the conclusion of the hearing, Plaintiff did not otherwise raise the issue before the ALJ or point to evidence supporting this assertion. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be

entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotations omitted)).

The court also agrees with the Commissioner that the ALJ properly discounted Mr. Schwieters's subjective complaints of walking and standing difficulties and adequately weighed the opinion evidence. The ALJ here affirmatively linked his determination to discount Plaintiff's subjective complaints to substantial evidence, *see* [#13-2 at 18-23], and the court will not disturb that finding here, *see Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (noting that the ALJ need not consider every factor in assessing a claimant's subjective complaints, because "common sense, not technical perfection, is our guide."). Likewise, the ALJ's decision makes clear the weight assigned, and the reasons supporting that weight, for each medical opinion. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that the court will uphold the ALJ's weighing of medical opinions if the ALJ provides specific and clear reasons for the weight assigned). And this is not a situation where the ALJ discredited a <u>treating source</u> opinion based on the ALJ's "own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis omitted).

Based on the foregoing, the court concludes that substantial evidence supports the ALJ's RFC assessment. And while there may be evidence supporting further restrictions, it is the ALJ's (not the court's) responsibility to resolve evidentiary inconsistencies, *see Allman*, 813 F.3d at 1333, and this court may not "displace the agency's choice between two fairly conflicting views," *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted). To find otherwise would require the court to reweigh the evidence before the ALJ—something the court may not do.

13

*See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, I find no error in the ALJ's RFC assessment.

**III.    Step Five**

At step five of the sequential analysis "the burden of proof shifts to the Commissioner . . . to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Hackett*, 395 F.3d at 1171; 20 C.F.R. § 404.1520(a)(4)(v). This also requires the ALJ to consider any exertional and nonexertional limitations that may impede the claimant's ability to perform the identified work and any impacts those limits have on the number of jobs available in the national economy that the claimant is functionally capable of performing. SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). The Commissioner can meet her burden by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines (the "Grids").[7] *Polson v. Astrue*, 508 F. App'x 705, 708 (10th Cir. 2013).

Mr. Schwieters argues that the ALJ erred at step five by misapplying the Grids. That is, had the ALJ properly found that Plaintiff retained the RFC to perform only sedentary work, as opposed to light work, then Grid 201.12 or 201.14 required a finding of disabled as of July 5, 2016. *See* [#20 at 12]. As the Commissioner aptly asserts, Mr. Schwieters's argument rests entirely on his belief that the ALJ should have limited Plaintiff to sedentary work. *See* [#21 at 11]. But as

---

[7] The Grids "are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. . . . The grids thus may provide a shortcut in certain circumstances to determining whether a claimant can perform other work by obviating the need for a vocational expert's testimony." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (internal citation and quotation marks omitted).

discussed, the court finds no error in the ALJ's RFC assessment limiting Plaintiff to light work. Thus, I find no error at step five.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED: July 12, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge